1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RICHARD R. GATES,

                          Plaintiff,

    v.

ROBERT LEGRAND, *et al.*,
                      Defendants.

3:16-cv-00401-MMD-CBC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE[1]**

10

11

12

13

14

15

       This case involves a civil rights action filed by Plaintiff Richard R. Gates ("Gates") against Defendants Romeo Aranas ("Aranas") and Don Poag ("Poag") (collectively referred to as "Defendants").[2] Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 38, 41.)[3] Gates opposed the motion (ECF No. 43), and Defendants replied. (ECF No. 46.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment (ECF No. 38) be granted.

16

**I.    BACKGROUND AND PROCEDURAL HISTORY**

17

18

19

20

21

       Gates is an inmate in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC"). (ECF No. 5.) Proceeding *pro se*, Gates filed the instant civil rights action pursuant to 42 U.S.C. § 1983 alleging Eighth Amendment deliberate indifference to serious medical needs claims against Defendants. (*Id.*)

22

23

24

       According to Gates's First Amended Complaint ("FAC") (ECF No. 5), the alleged events giving rise to his claims are as follows. On March 7, 2013, at a prison-mandated

25

26

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

27

[2] Gates also named Katherine Hegge as a defendant in this lawsuit. (*See* ECF No. 5). Defendant Hegge was dismissed as service was not effectuated. (ECF No. 27).

28

[3] ECF No. 41 consists of sealed documents in support of Defendants' motion for summary judgment.

1   physical, Dr. Donnelly diagnosed Gates with chronic obstructive pulmonary disease
2   ("COPD"). (*Id.* at 3). Dr. Donnelly designated Gates as "chronic care" and prescribed
3   Gates a XOPENEX rescue inhaler. (*Id.*) Dr. Donnelly instructed Gates to take two puffs
4   three times per day and told Gates to use the inhaler one to two times extra a day if
5   needed. (*Id.*) Dr. Donnelly told Gates the prescription could be refilled "as needed." (*Id.*)
6   Based on that prescription, one XOPENEX rescue inhaler only lasted 25 to 40 days,
7   depending on use. (*Id.* at 3-4.)

8          On April 1, 2013, Gates submitted a medical kite and requested a prescription
9   refill. (*Id.* at 4.) Prison officials responded that Gates could not receive a refill until June
10  13, 2013. (*Id.*) In reply, on April 5, 2013, Gates sent a medical kite and informed prison
11  officials about Dr. Donnelly's instructions. (*Id.*) Prison officials responded, "You need to
12  kite the doctor and ask for an appointment to discuss the issue." (*Id.*)

13         On April 9, 2013, Gates filed an emergency grievance. (*Id.*) In response, prison
14  officials stated, "You will be seen by medical." (*Id.*) That day, Gates saw Dr. Scott. (*Id.*)
15  Dr. Scott, who did not listen to Gates's lungs or ask any questions, announced that he
16  was changing Gates's prescription from the XOPENEX rescue inhaler to the
17  ATROVENT inhaler. (*Id.*) Gates received the ATROVENT inhaler on May 3, 2013. (*Id.*)

18         On May 20, 2013, Gates requested a refill on the ATROVENT inhaler. (*Id.*) Prison
19  officials told Gates that the refill was there but that they could not give the refill to Gates
20  until June 3, 2013, or every 30 days. (*Id.*) On May 25, 2013, Gates sent a medical kite
21  explaining that the inhaler's dosage only lasted for 20 to 22 days and asked whether he
22  was not supposed to breathe for 5 to 10 days out of the month? (*Id.* at 4-5.) Prison
23  officials responded, "If you feel you are using this medication as directed and you are still
24  running short, you may need your medication adjusted. That would require you kite and
25  ask for an appointment with the doctor to address your concerns." (*Id.* at 5.)

26         Gates requested an appointment with the doctor and spoke to Dr. Scott on May
27  27, 2013. (*Id.*) After explaining the situation to Dr. Scott, Dr. Scott rewrote the
28  prescription so that Gates could request a prescription refill at any time. (*Id.*) The

prescription refills went smoothly until November 26, 2013. (*Id.*) On that date, Poag again required that the ATROVENT inhaler only be refilled every 30 days. (*Id.*) During that appointment, a nurse explained to Poag, in front of Gates, that Gates's inhaler does not support a 30-day guideline. (*Id.*) On December 12, 2013, in response to the medical kite, Poag responded, "looks like the order was changed, so this shouldn't be an issue anymore." (*Id.*) Poag did not identify who changed the order. (*Id.*) After Poag's response, Gates was forced to adhere to the 30-day guideline. (*Id.*) On July 20, 2014, Gates requested an appointment with the new LCC doctor, Dr. John Van Horn. (*Id.* at 6).

On July 24, 2014, Dr. Van Horn met with Gates and addressed Gates's COPD. (*Id.*) When Dr. Van Horn asked about the ATROVENT prescription, Gates explained that it was "minimally effective." (*Id.*) Dr. Van Horn changed Gates's COPD medication to ATROVENT for two inhalations, two times per day; DULERA for two inhalations, two times per day, and XOPENEX for two inhalations as needed every four hours. (*Id.*) When Gates explained his previous refill problems for XOPENEX, Dr. VanHorn told Gates that it would "not be a problem." (*Id.*)

Gates received both his DULERA and ATROVENT refills without any problems. (*Id.*) However, when Gates requested a XOPENEX refill on September 19, 2014, prison officials responded "too soon send when due." (*Id.*) Gates's inhaler was empty on September 22, 2014. (*Id.*) Prison officials denied Gates's request to meet with Dr. Van Horn. (*Id.*)

On October 2, 2014, Gates met with Dr. Donnelly who did not help. (*Id.* at 6-7.) When Gates's request to meet with Dr. Van Horn went unanswered, Gates began the grievance process and attached copies of Dr. Van Horn's prescription labels. (*Id.* at 7.) On January 5, 2015, Hegge responded, "I contacted the NDOC pharmacy. They say you were given a 3-month supply of medication in your inhaler. They will fill it again the first part of January. If this is not lasting you the entire 3 months, you can submit a kite to the doctor to discuss your concerns." (*Id.*) On January 7, 2015, Gates appealed the decision and outlined how the inhaler only lasts 20 to 45 days. (*Id.*) On February 17, 2015, Poag

1    responded but "did not bother" to read the previous response or exhibits. (*Id.*) On

2    February 19, 2015, Gates appealed the decision to Aranas who responded, "agree with

3    first level response." (*Id.* at 7-8.)

4           Gates alleges three counts of Eighth Amendment violations and alleges that the

5    prescription denials caused: (a) micro tears in his lungs when he exercised due to

6    labored breathing and blood in his mucus; (b) an inability to exercise and a weight gain

7    of 60 pounds; and (c) increased blood pressure due to increase in obesity level requiring

8    medication to keep his blood pressure in normal range. (*Id.* at 8-10.)

9           Pursuant to 28 U.S.C. § 1915A(a), the District Court entered a screening order,

10   allowing Gates to proceed with his Eighth Amendment deliberate indifference to serious

11   medical needs claims against Defendants Aranas and Poag. (ECF No. 7.) On March 18,

12   2019, Defendants filed their motion for summary judgment asserting that they are

13   entitled to summary judgment because Gates fails to prove medical deliberate

14   indifference or personal participation by the Defendants. (ECF No. 38). Gates opposed

15   (ECF No. 43), and Defendants replied (ECF No. 46).

16   **II.    LEGAL STANDARD**

17          Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle*

18   *Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly

19   grants summary judgment when the record demonstrates that "there is no genuine

20   issue as to any material fact and the movant is entitled to judgment as a matter of law."

21   *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify

22   which facts are material. Only disputes over facts that might affect the outcome of the

23   suit under the governing law will properly preclude the entry of summary judgment.

24   Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v.*

25   *Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a

26   reasonable jury could find for the nonmoving party. *Id.* Conclusory statements,

27   speculative opinions, pleading allegations, or other assertions uncorroborated by facts

28   are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509

4

F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary

1  judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
2  586–87 (1986).

3      For purposes of opposing summary judgment, the contentions offered by a *pro se*
4  litigant in motions and pleadings are admissible to the extent that the contents are based
5  on personal knowledge and set forth facts that would be admissible into evidence and
6  the litigant attested under penalty of perjury that they were true and correct. *Jones v.*
7  *Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

8  **III.    DISCUSSION**

9      **A. Civil Rights Claims under 42 U.S.C. § 1983**

10      42 U.S.C. § 1983 aims "to deter state actors from using the badge of their
11  authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*,
12  451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th
13  Cir. 2000)). The statute "provides a federal cause of action against any person who,
14  acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*,
15  526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing
16  substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947
17  F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege
18  (1) the violation of a federally-protected right by (2) a person or official acting under the
19  color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the
20  plaintiff must establish each of the elements required to prove an infringement of the
21  underlying constitutional or statutory right.

22      Defendants argue they are entitled to summary judgment because (1) Gates's
23  theory of liability against Defendants is based solely on their responses to Gates's
24  grievances; and (2) Gates's Eighth Amendment deliberate indifference to serious
25  medical needs claim is without merit. (ECF No. 38.)

26      **B. Personal Participation**

27      "There are two elements to a section 1983 claim: (1) the conduct complained of
28  must have been under color of state law, and (2) the conduct must have subjected the

6

plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985). Liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, 173 L.Ed. 2d 868 (2009).

Gates alleges that Defendants personally participated in his constitutional deprivation as grievance responders. (ECF No. 43 at 3, 5.) Gates relies on the Ninth Circuit case, *Jett v. Fenner*, for the assertion that a supervisor who is aware of an alleged constitutional violation because he reviewed an inmate's administrative grievance may be liable if he failed to remedy it. *Jett v. Fenner*, 439 F.3d 1091 (9th Cir. 2006). In *Jett*, the inmate plaintiff (Jett) fell off his bed and fractured his thumb. *Id.* at 1094. Because Jett injured himself on a Saturday, prison staff took him to a private emergency room, where a doctor gave him a temporary splint and told him to see a specialist early the following week. *Id.* Nineteen months passed before Jett finally saw a specialist, despite his notifying medical staff of his pain, submitting medical slips, sending letters to prison doctors, filing a formal grievance, and sending the prison warden a letter four months after he fractured his thumb and fifteen months before he finally saw a specialist. *Id.* at 1094-95. The Ninth Circuit held that Jett had presented sufficient evidence to raise a triable issue of fact as to whether the warden was

1  deliberately indifferent to Jett's medical need, based on Jett's allegation that he

2  personally sent a letter to the warden, which the warden allegedly ignored, fifteen

3  months before Jett finally saw a specialist. *See id.* at 1098. The Ninth Circuit noted that

4  the warden would be liable for deliberate indifference if he "knowingly fail[ed] to respond

5  to an inmate's requests for help." *Id.*

6        In 2012, the Ninth Circuit again addressed the issue of whether responding to a

7  grievance can rise to the level of personal participation required for a § 1983 claim in

8  *Snow v. McDaniel*, 681 F.3d 978 (9th Cir. 2012)., *overruled on other grounds* in *Peralta*

9  *v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). In *Snow*, the inmate plaintiff had submitted

10  several grievances about the denial of a recommended hip surgery; there was testimony

11  that the warden and associate warden were aware of the grievances, and that they had

12  reviewed an order stating that the inmate needed a hip replacement. *Snow*, 681 F.3d at

13  989. Defendants argued that there was no evidence in the record that they were

14  personally involved in any of the medical treatment decisions. *Id.* The Ninth Circuit,

15  however, said that their review of the grievance was sufficient to demonstrate that the

16  warden and associate warden were aware of the inmate's serious hip condition and

17  failed to act to prevent further harm so that the warden and associate warden were not

18  entitled to summary judgment based on lack of personal participation. *Id.*

19        While the Ninth Circuit has made clear that grievance responders can be held

20  liable for deliberate indifference if they "knowingly fail[ed] to respond to an inmate's

21  requests for help," the evidence in this case shows that Poag and Aranas did not

22  "knowingly fail to respond" to Gates's grievance related to his XOPENEX inhaler. A

23  review of the record related to Gates's grievance procedure reveals the following: On

24  December 21, 2014, Gates initiated the grievance process related to not receiving a refill

25  of his XOPENEX inhaler, by filing informal grievance #20062991460. (ECF No. 43-1 at

26  4-7.) Katherine Hegge denied the informal grievance on December 29, 2014. (*Id.* at 8.)

27  On January 7, 2015, Gates filed his first level grievance. (*Id.* at 9-11.) Defendant Poag

28  denied the first level grievance on February 5, 2015. (*Id.* at 12.) On February 19, 2015,

1    Gates filed his second level grievance. (*Id.* at 13-15.) Defendant Aranas denied the

2    second level grievance on May 6, 2015. (*Id.* at 16.)

3        Attached to Gates's opposition to the motion for summary judgment, is Gates's

4    sworn affidavit, which lays out the following, additional facts: (1) Gates initiated the

5    grievance process on December 21, 2014; (2) the XOPENEX inhaler was refilled in

6    January of 2015; and (3) Gates "was forced to refuse the XOPENEX inhaler in January

7    of 2015 because of legal issues of mootness were now attached."[4] (ECF No. 43 at 10.)

8    A review of Gates's medical history shows that Gates's COPD medication was changed

9    on December 23, 2014, when he was taken off XOPENEX and given Albuterol via a

10   nebulizer for seven days, effectively mooting his grievance related to not receiving his

11   XOPENEX inhaler.  (*See* ECF Nos. 41-1 at 4; 41-2 at 4-5.)

12       It is undisputed by the parties that Gates received COPD medication and

13   treatment in January of 2015. (*See* ECF Nos. 43 at 10; 41-1; 41-2.) Poag and Aranas did

14   not respond to Gates's grievance until February 5, 2015 and May 6, 2015, respectively.

15   (ECF No. 43 at 9-16.) Even if Gates suffered a constitutional violation by not receiving

16   his XOPENEX inhaler, that violation was remedied in January of 2015, when Gates's

17   COPD prescription was changed, and he received another course of treatment. Gates

18   does not allege that Poag and Aranas knew of the alleged constitutional violations *prior*

19   *to* the dates Defendants responded to the grievances or *prior to* the date Gates received

20   medical treatment. The Court finds that after-the-fact knowledge of an alleged

21   constitutional violation, which was already remedied, cannot rise to the level of

22   participation required for a § 1983 suit. *See Bradberry v. Nevada Dept. of Corrections*,

23   No. 3:11-cv-00668-RCJ-VPC, 2013 WL 4702953, at *15-16 (D. Nev. Aug. 30, 2013) (a

24   supervisor cannot be liable for after-the-fact complaint of alleged constitutional violations

25   or after-the-fact knowledge of the event).  Accordingly, the Court finds that Defendants

26   _____

27   [4] It is unclear to the Court what exactly Gates means by his statement that he was "forced to refuse" his prescription because "legal issues of mootness were now attached," but the Court could infer that Gates

28   refused his prescription so that he could pursue this lawsuit. Nevertheless, the record shows that Gates received other medical treatment in late December 2014 for his COPD. (ECF Nos. 41-1; 41-2.)

lacked the personal participation required to be held liable in a § 1983 suit and therefore Defendants are entitled to summary judgment.

Because the Court finds that Defendants lacked the level of participation required for a § 1983 suit, it need not address Defendants' other arguments.

## IV.    CONCLUSION

Based upon the foregoing, the Court recommends Defendants' motion for summary judgment (ECF No. 38) be granted.  The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 38) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**:  August 29, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**

10